IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RODNEY SIMMS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 10 C 2795 |
| NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD, d/b/a METRA, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Rodney Simms has sued his employer, Northeast Illinois Regional Commuter Railroad d/b/a Metra (Metra). He asserts claims under the Family and Medical Leave Act (FMLA) and the Declaratory Judgment Act. Both parties have moved for summary judgment. For the reasons stated below, the Court grants Metra's motion and denies Simms's motion.

### Background

Simms works for Metra as a coach cleaner and is a member of the Brotherhood Railway Carmen Division of the Transportation Communications International Union. He is covered by a collective bargaining agreement (CBA) between Metra and the union.

Simms experiences edema in his legs that periodically requires him to take short amounts of time off from work, usually one to three days. On August 6, 2007, Metra allowed Simms to take intermittent leave under the FMLA as necessary when he was

unable to work due to his edema. He took leave frequently; between August 6, 2007 and July 17, 2008, he missed forty-eight days of work. Metra has continuously renewed Simms's approval for intermittent leave to the present day. It is undisputed that Metra never denied Simms the FMLA leave he requested and that Metra always reinstated him after he returned from FMLA leave.

In October 2007, Simms began working the third shift at Metra's facility in Richton Park, Illinois. He was one of only two coach cleaners assigned to Richton Park on the third shift. The two were responsible for cleaning about sixty train cars every day. Simms took leave frequently because of his edema, and when he did so the remaining coach cleaner was unable to fully clean all of the cars. Specifically, when Simms was absent, the other coach cleaner was able to clean only the bottom level of the cars, leaving the top level uncleaned. Metra could have another employee fill Simms's shift only if it paid that employee overtime wages. Even then, Metra had trouble finding employees willing to cover Simms's shift. Between August 6, 2007 and July 17, 2008, Metra had replacement workers on only three of the forty-eight days Simms was absent.

On the Metra line on which Simms worked, no Metra facility had more than three or four coach cleaners working third shift. Consequently, none of the third shift locations had enough other coach cleaners to accommodate Simms's frequent absences. By contrast, Metra's 18th Street facility had between ten and fifteen coach cleaners working on the first shift. Some of the first shift workers were "floaters," assigned to cover the work responsibilities of anyone who was absent. Metra therefore wished to have Simms work on the 18th Street day shift instead of on third shift at any

2

of its facilities.

On May 12, 2008, Metra abolished Simms's third shift position at Richton Park. Under the terms of the CBA, Simms was allowed to "bump" other employees with less seniority by taking one of their positions as his own. He first attempted to bump another employee with a third shift position at a different Metra station. Metra then abolished that position. Simms next attempted to bid on his own third shift position at Richton Park, which had been reestablished. Metra instead awarded the Richton Park position to an employee with less seniority. Simms attempted to obtain two other third shift positions, but Metra denied his request each time. Finally, Metra informed Simms that he would not be allowed to take any third shift position because his frequent absences rendered him unqualified for those positions. On July 7, 2008, Simms took a first shift position at Metra's 18th Street station and currently works there. His rate of pay remained the same.

In June 2008, a union representative filed a grievance for Simms stating that he was not being allowed to exercise his seniority and bid on third shift positions. Richard Soukup, Metra's chief mechanical officer, responded in August 2008 and explained that Metra did not consider Simms qualified for the third shift because of his frequent absences. Pl. Ex. 4. Soukup also stated that FMLA regulations allowed Metra to temporarily transfer an employee who was using FMLA intermittent leave but that he could regain his third shift job if his FMLA leave situation changed. Simms did not pursue the grievance any further. Soukup testified at his deposition in this case that he thought that abolishing Simms's Richton Park position was the proper way under the CBA to accommodate Simms's intermittent FMLA leave and move him to another

3

position. Pl. Ex. 5 at 81.

## Discussion

On a motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court may grant summary judgment "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Simms argues that Metra's termination of his Richton Park position and refusal to allow him to take any other third shift position violated the FMLA, Metra's FMLA policies, the CBA, and the Railway Labor Act (RLA), and he requests declaratory and injunctive relief as well as compensatory damages and attorney's fees. Specifically, he claims that Metra's actions amount to both FMLA interference and FMLA retaliation.

### A. FMLA interference claim

"To prevail on an FMLA interference claim . . . the employee must establish that: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). Simms concedes that he has always been allowed to take FMLA intermittent leave when he needed to do so.

4

Accordingly, he cannot satisfy an element of an FMLA interference claim. Entry of summary judgment for Metra on this claim is therefore appropriate.

B. **FMLA retaliation claim**

To prevail on his FMLA retaliation claim, Simms must show "(1) he engaged in a protected activity; (2) [Metra] took adverse employment action against him; and (3) there is a causal connection between [Simm's] protected activity and [Metra's] adverse employment action." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 633 (7th Cir. 2009). There is no dispute that Simms engaged in a protected activity—requesting leave under the FMLA—and that his FMLA intermittent leave caused Metra to abolish his third shift position and prevent him from working at any other third shift positions. Metra argues, however, that its action was specifically permitted by the FMLA.

The FMLA provides:

> If an employee requests intermittent leave, . . . the employer may require such employee to transfer temporarily to an available alternative position offered by the employer for which the employee is qualified and that—
> (A) has equivalent pay and benefits; and
> (B) better accommodates recurring periods of leave than the regular employment position of the employee.

29 U.S.C. § 2612(b)(2). Metra's written FMLA policy also states that, with regard to intermittent leave, it "reserves the right to transfer the employee temporarily to an available alternative position if such leave will cause undue hardship to the [Human Resources] Department and if the transfer does not conflict with rules stated in Collective Bargaining Agreements." Pl. Ex. 2 at 3. Metra argues that its termination of Simms's position and its refusal to allow him to take any other third shift position amounted to a transfer permitted under the FMLA. It contends that the CBA did not

5

include any explicit transfer provision but instead allowed for the elimination of a position followed by allowing the employee to bump into another position for which he was qualified.

In response to Metra's contention that its actions amounted to a permissible transfer under the FMLA, Simms makes two arguments. First, he contends that Metra did not transfer him. He notes that Metra admitted that its action was "not termed a 'temporary transfer' but instead was a bid-based reassignment." Def. Resp. to Pl. Stat. of Undisputed Facts ¶ 15. When Simms filed a grievance with Metra, however, Soukup justified Metra's action under the FMLA by stating that "the FMLA regulations that allow Mr. Simms up to 12 weeks off on intermittent leave also allow [employers] to transfer the employee temporarily during the period the intermittent leave is required." Pl. Ex. 4 at 3. Soukup also wrote that "if [Simms's] situation changes he is entitled to bid back on his 3rd shift position," *Id.*, indicating that Simms's assignment to the first shift need last only as long as he took intermittent FMLA leave. Simms has not presented any authority stating that actions like those Metra took do not constitute temporary transfer within the meaning of the FMLA. The Court agrees with Metra and concludes that its elimination of Simms's position as a way of dealing with his intermittent leave was a transfer allowed under the FMLA.

Simms also contends that Metra's actions violated the FMLA because they violated the CBA and the RLA. Regulations enacted under the FMLA state that "[t]ransfer to an alternative position may require compliance with any applicable collective bargaining agreement, federal law . . . , and state law." 29 C.F.R. § 825.204(c). The FMLA does not "diminish the obligation of an employer to comply with

6

any collective bargaining agreement . . . that provides greater family or medical leave rights to employees than the rights established under" the FMLA. 29 U.S.C. § 2652(a). Finally, Simms notes that the RLA provides that a common carrier like Metra cannot unilaterally change "the rates of pay, rules, or working conditions of its employees, as a class" but must comply with the procedures that the CBA and the RLA provide for changing pay, rules, and working conditions. 45 U.S.C. § 152 Seventh. Despite his references to the CBA and RLA, however, Simms contends that he is not bringing a claim under the RLA. Indeed, he has conceded that such a claim is barred because he has not satisfied the RLA's exhaustion requirements.[1] Pl. Reply to Mot. to Amend. Compl. at 3; *see Union Pac. R.R. v. Bhd. of Locomotive Eng'rs & Trainmen General Comm. of Adjustment, Cent. Region*, 130 S. Ct. 584, 592 (2009). Instead, he argues that Metra has violated the FMLA by failing to comply with the CBA.

The RLA, however, may preclude any claim under the FMLA that Metra violated the CBA. The RLA requires that all "minor disputes" under CBAs be handled according to the RLA's procedures, and it therefore bars any other attempts to litigate minor disputes. *Hawaiian Airlines v. Norris*, 512 U.S. 246, 252–53, 259 n.6 (1994) (analyzing whether state law claim was preempted, but stating that analysis was the same for federal or state law); *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 565–66 (1987) (analyzing whether claim under federal statute was barred by RLA). "Minor disputes involve controversies over the meaning of an existing collective

---

[1] Metra argues that any claim under the RLA would be untimely because the limitations period under that statute has expired. The Court need not consider this argument because Simms states that he is not bringing an RLA claim.

7

bargaining agreement in a particular fact situation." *Hawaiian Airlines*, 512 U.S. at 253 (internal quotation marks omitted).

> A claim brought under an independent federal statute is precluded by the RLA only if it can be dispositively resolved through an interpretation of a CBA. This occurs only when a provision of the collective bargaining agreement is the subject of the dispute or the dispute is substantially dependent upon an analysis of the terms of a collective bargaining agreement.

*Brown v. Ill. Cent. R.R.*, 254 F.3d 654, 668 (7th Cir. 2001) (considering claim under Americans with Disabilities Act); *Miller v. Am. Airlines*, 525 F.3d 520, 524 (7th Cir. 2008) (considering claim under Age Discrimination in Employment Act). "[I]f the success of the claim is dependent upon an interpretation of the collective bargaining agreement's terms, the court cannot consider it." *Miller*, 525 F.3d at 524.

Simms's claim that Metra violated that FMLA by violating the provisions of the CBA is precluded by the RLA because it can be resolved only by interpreting the CBA. *See Brown*, 254 F.3d at 659–61 (ADA claim precluded because employee's desired accommodation might have counted as new job that first must be offered to senior employees; interpretation of CBA might therefore entirely resolve claim against employee). It is undisputed that no provision of the CBA specifically addresses the application of the FMLA. But whether Metra violated the CBA still depends on interpretation of its provisions.

In particular, the CBA must be interpreted to determine whether the absence of terms related to transfer meant that Metra could not effectively transfer a worker by abolishing his position and requiring him to bid on others. *Tice v. Am. Airlines*, 288 F.3d 313, 316 (7th Cir. 2002) (age discrimination claim called for interpreting CBA even

8

though specific situation at issue was not mentioned by CBA, because contracts contain implied terms).  Additionally, the parties disagree on whether under the CBA Simms could be disqualified from third shift positions by his use of FMLA intermittent leave even though he was never medically disqualified from working as a coach cleaner.  *See Monroe v. Mo. Pac. R.R.*, 115 F.3d 514, 518 (7th Cir. 1997) (RLA barred claims under Federal Employers Liability Act and state law when it required examination of employee's physical fitness for job, standards for which were implied terms of the CBA).  Ultimately, because Simms's argument for relief under the FMLA is that Metra violated the CBA and no provision of the CBA explicitly permits or forbids his temporary transfer, interpretation of the CBA is dispositive, and his claim is precluded by the RLA.[2]

Simms contends that his claim is supported by *Brotherhood of Maintenance of Way Employees v. CSX Transportation, Inc.*  In that case, the Seventh Circuit analyzed the interaction of a provision of the FMLA stating that employers could require employees to substitute paid leave for unpaid FMLA leave and a provision in several CBAs that did not require employees to substitute paid vacation leave when they took unpaid FMLA leave.  *CSX Transp.*, 478 F.3d at 816–17; *see* 29 U.S.C. § 2612(b).  The court noted that the FMLA provision only permitted employers to require employees to substitute paid leave and did not require employees to do so.  *CSX Transp.*, 478 F.3d at

---

[2] Simms does not argue that Congress intended to override the RLA's arbitration scheme when it enacted the FMLA.  *Brown*, 254 F.3d at 662–63 (preclusion analysis could be overruled by clear Congressional intent to override arbitration requirements); *cf. Bhd. of Maintenance of Way Emps. v. CSX Transp., Inc.*, 478 F.3d 814 (7th Cir. 2007) (recognizing in another context that ambiguous FMLA language would not overturn RLA provisions in light of long history of collective bargaining in railroad industry).

818. Because the FMLA was only permissive, there was no reason to conclude that the FMLA was intended to overturn provisions of CBAs that were more favorable to employees. *Id.* at 819–20. The court concluded that the FMLA did not allow employers to ignore their contractual obligations under the CBAs. *Id.* at 820.

*CSX* does not support Simms's position in the current case. The Seventh Circuit's reasoning in that case suggests that Metra could not transfer Simms in violation of the CBA, but the regulations under the FMLA already expressly required Metra to comply with its CBA when temporarily transferring Simms. 29 C.F.R. § 825.204(b). More importantly, the dispute in *CSX* was not a minor dispute subject to mandatory arbitration under the RLA. *See* 2d Am. Compl., *Bhd. of Maintenance of Way Emps. v. CSX Transp., Inc.*, No. 03 C 9419, docket no. 121 at 15 (N.D. Ill. June 3, 2004) (claiming violation of "*major* dispute provisions of the RLA" (emphasis added)). Unlike the current case, *CSX* did not involve applying the CBAs to a particular fact situation. The parties did not dispute what the CBAs required; rather, they disagreed about whether the provisions of the FMLA overrode the contractual requirements. *CSX Transp.*, 478 F.3d at 816–17; *see Brown*, 254 F.3d at 668 (RLA does not preclude claim if parties agree on the interpretation of CBA provision at issue). The district court in *CSX* stated in its resolution of the case that "[i]f CBA provisions grant employees the right to determine when, or in what manner, they utilize certain types of paid vacation and personal leave, those CBA provisions prevent employers from substituting such leave for FMLA leave," making it clear that the court was not interpreting what rights existed under the CBAs. *CSX Transp.*, No. 03 C 9419, 2005 WL 3597700, at *9 (N.D. Ill. Dec. 28, 2005). Finally, the plaintiffs in *CSX* actually made a claim under the RLA,

10

whereas Simms here has expressly denied that he is making such a claim. 2d Am. Compl., *CSX Transp.*, No. 03 C 9419, docket no. 121 at 15.

In sum, Simms's claim of FMLA retaliation fails because the FMLA and its regulations expressly permitted Metra to temporarily transfer an employee receiving intermittent leave. Simms's argument that Metra violated the FMLA by failing to comply with the CBA is precluded by the RLA. Simms has not brought an RLA claim and concedes that he has not met the exhaustion requirements to do so. Accordingly, Metra is entitled to summary judgment on Simms's FMLA retaliation claim.

## Conclusion

For the reasons stated above, the Court grants defendant's motion for summary judgment [docket no. 27] and denies plaintiff's motion for summary judgment [docket no. 24]. The Court directs the Clerk to enter judgment in favor of defendant.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 28, 2012